**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER MONTECALVO, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>CABELA'S LLC, f/k/a CABELA'S INC.,<br><br>      Defendant. | Case No. 1:22-cv-11837-NMG |

**DEFENDANT CABELA'S LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT .......................................................................................................................... 4

    I.      Plaintiff Fails to Adequately Allege a Violation of the Wiretap Statute Because He Fails to Allege Wire Communications Were "Intercepted." .............. 4

          A.      Plaintiff Does Not Allege Cabela's "Secretly" Recorded Plaintiff's Communications. ..................................................................... 5

          B.      Plaintiff Does Not Allege Cabela's Intercepted Communication "Contents." ................................................................................................. 8

          C.      Plaintiff Does Not Allege the Software Cabela's Uses Is A "Intercepting Device." ............................................................................. 11

    II.     Plaintiff's Invasion of Privacy Claim Fails Because Capturing of Plaintiff's Movement on Cabela's Public Website Did Not Invade Plaintiff's Solitude. .............................................................................................. 13

    III.    Alternatively, Plaintiff Lacks Standing to Assert a Claim for Injunctive Relief. ................................................................................................................. 13

CONCLUSION ..................................................................................................................... 14

Defendant Cabela's LLC f/k/a Cabela's Inc. ("Cabela's") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Peter Montecalvo's Complaint (ECF No. 1) ("Compl.") for Plaintiff's failure to state a claim upon which relief can be granted and lack of standing (to pursue injunctive relief).[1]

## INTRODUCTION

With this putative class action, Plaintiff has filed a copycat complaint challenging Cabela's use of routine software-based solutions that improve the design, functionality, and user experience of its customer-facing website. Specifically, Plaintiff claims that the routine software Cabela's utilizes to, for example, identify, troubleshoot, and remediate bugs on its website constitutes "wiretapping" and an "invasion of privacy" under Massachusetts law. Courts around the country repeatedly and routinely reject claims just like these. Plaintiff's Complaint fails on its face, demanding dismissal under Rule 12(b)(6). This is true of both his claim under Massachusetts's Wiretapping Statute (the "Wiretap Statute" or "Statute"), Mass. Gen. Laws. ch. 272 §99(Q) *et seq.*, and his invasion of privacy claim under Massachusetts law, Mas. Gen. Laws. ch. 214 §1B. Indeed, there is no Massachusetts precedent to support Plaintiff's novel application of these statutes to the session replay software ubiquitously used in e-commerce.

*First,* as to his Wiretap Statute claim, Plaintiff fails to plead the necessary elements of a viable claim. Specifically, Plaintiff fails to allege that (1) Cabela's alleged "interception" was *secret;* (2) Cabela's intercepted any communication "contents," as defined by the Statute; or (3) the software Cabela's allegedly utilizes on its website is a "intercepting device" under the Statute. Put simply, Plaintiff's allegations regarding mouse movements, mouse clicks, and URLs are nothing more than non-content information outside the scope of state and federal wiretapping laws,

---

[1] Cabela's reserves its rights to challenge class certification.

including Massachusetts's. What's more, Plaintiff was aware of, and consented to, the alleged capture of the data at issue in this litigation because Cabela's discloses its data collection and use practices in its publicly available privacy statement. As such, Plaintiff has failed to state a viable claim under the Wiretap Statute, and any such allegations should be dismissed.

*Second*, Plaintiff's invasion of privacy claim fails as a matter of law because Plaintiff failed to allege that Cabela's purported capture of the data on its own website was an invasion of Plaintiff's "seclusion or solitude."

Seperately, Plaintiff's claims for injunctive relief should be dismissed because he lacks standing to pursue such a claim.

## BACKGROUND

Cabela's is a nationwide retailer of outdoor products, including camping, hunting, and other outdoor equipment. Compl. ¶ 38. Plaintiff Peter Montecalvo is a Connecticut resident who alleges he visited Cabela's website on an unspecified date from his computer "while in Massachusetts." *Id.* ¶ 43. Nowhere, however, does Plaintiff allege what he did while visiting Cabela's website or what information—if any—he allegedly provided to Cabela's during his visit (or visits).

Instead of offering any specifics as to his interaction with Cabela's website, Plaintiff alleges that Cabela's has procured certain third-party vendors "to embed snippets of JavaScript computer code . . . on Cabela's website." *Id.* ¶ 1. This code, Plaintiff alleges, tracks the website's visitor information such as "mouse movements," "clicks," "URLs of web pages visited," and "keystrokes." *Id.* In other words, Plaintiff alleges that Cabela's uses software code with a session replay features to reproduce a user's online experience, allowing Cabela's to understand how visitors interact with the website. *Id.* ¶ 2. Nowhere does Plaintiff allege that he was harmed by the use or the purported use of this technology, beyond conclusory assertions of mental distress.

The lack of harm is unsurprising. Session replay software is a common analytics tool employed by numerous websites, including major retailers located nationwide to ensure functionality on their websites. *See* https://www.fullstory.com/session-replay/ (last accessed January 4, 2023). It allows website owners to see if a technical issue is interfering with a user's desired website access. *Id.* For example, repeatedly clicking a button on a website may indicate that the button is not operating correctly and requires maintenance. A website owner can enable session replay by embedding JavaScript code, provided by a session replay vendor, in the target website. *Id.* The JavaScript code tracks specific browser events that occur on that website, such as mouse movements, clicks, scrolls, window resizing, and page loads. *Id.* These discrete pieces of data are pieced together using session replay software to recreate a visual depiction of a user's website experience without exposing customers' personal information. *Id.* In short, session replay simply "achieve[s] an improved technological result in *conventional industry practice.*" *Content Square SAS v. Quantum Metric, Inc.*, No. 20-832-LPS, 2021 U.S. Dist. LEXIS 51656, at *13 (D. Del. Mar. 18, 2021) (emphasis added).

Undeterred, Plaintiff has filed the instant putative class action claiming Cabela's routine use of session replay software "wiretapped" his communications (if any exist) with Cabela's website in violation of the Wiretap Statute (Compl. ¶¶ 65–81) and constitutes an intrusion upon seclusion under Massachusetts common law (*id.* ¶¶ 82–95). Plaintiff seeks to assert these claims on behalf of himself and a putative class of persons in Massachusetts "whose Website Communications were captured in Massachusetts through the use of Session Replay Code embedded in www.cabelas.com." *Id.* ¶ 56.

## **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S.

3

544, 555 (2007). A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Rather, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation and internal quotation marks omitted); *See also Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F.Supp.3d 353, 358 (D. Mass. 2016) ("Dismissal is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory"). This demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 570.

## ARGUMENT

Plaintiff's Complaint should be dismissed for at least three reasons. *First*, Plaintiff does not satisfy the federal pleading standards as to any of his allegations concerning a purported violation of the Wiretap Statute—he does not even allege that he provided any information on the website that could have been "wiretapped." *Second*, Plaintiff does not plead a viable claim for invasion of privacy on under Massachusetts law. *Third*, Plaintiff lacks standing to bring a claim for injunctive relief.

### I. Plaintiff Fails to Adequately Allege a Violation of the Wiretap Statute Because He Fails to Allege Wire Communications Were "Intercepted."

Plaintiff fails to state a viable claim under the Wiretap Statute. The Statute permits a private right of action to "[a]ny aggrieved person whose oral or wire communications were intercepted, disclosed or used" Mass. Gen. Laws ch. 272, § 99(Q). Thus, before the Wiretap Statute can apply, a defendant must have first "intercepted" communications. To "intercept" is a term of art that means "secretly hear, *secretly* record, or aid another to secretly hear or secretly record the *contents* of any wire or oral communication through the use of any *intercepting device*." Mass. Gen. Laws

4

ch. 272 § 99(B)(4) (emphases added). The key terms in this definition are wholly missing from the allegations in Plaintiff's Complaint.

In fact, Plaintiff is actually asking the Court to apply a completely novel interpretation of the Wiretap Statute that was enacted for a completely different purpose than tracking mouse movements and URL visits on Cabela's own website. In fact, in Courts interpreting similar wiretap statutes have found that wiretap statues do not apply to session replay technology. *See Connor v. Whirlpool Corp.*, Case No. 2:21-cv-14180-WPD. Dkt. 31 (S.D. Fla. Sept. 15, 2021) ("the FSCA does not apply to claims regarding session replay technology software on a commercial website"); *see also Cardoso v. Whirlpool Corp.*, Case No. 0:21-cv-60784-WPD, Dkt. 42 (S.D. Fla. Sept. 15, 2021) (same); *Goldstein v. Costco Wholesale Corp.*, 559 F.Supp.3d 1318, 1321 (S.D. Fla. Sept. 9, 2021) (same); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV-CAN, Dkt. 33 (S.D. Fla. Aug. 20, 2021) (same); *Swiggum v. EAN Servs., LLC*, No. 8:21-493, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) (same); *Jacome v. Spirit Airlines, Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (same). For those reasons, Plaintiff's claim under the Wiretap Statute should be dismissed.

### A. Plaintiff Does Not Allege Cabela's "Secretly" Recorded Plaintiff's Communications.

To have a claim under the Wiretap Statute, the interception must be *secret*. "Interception" is defined under the Wiretap Statute as to "secretly hear, *secretly* record." Mass. Gen. Law ch. 227, § 99(B)(4). "The core of the statute is thus, the prevention of the *secret* interception of wire communications, i.e., an interception that is secret as to at least one of the participants." *Marquis v. Google, Inc.*, SUCV2011-02808-BLS1; 2014 WL 4180400, at *12 (Mass. Jul. 27, 2014). "In consequence, if a recording is not made secretly it does not constitute an 'interception' and there has been no violation of the statute." *Id.*

Here, any "interception" of Plaintiff's mouse movements, clicks, and URLs visited was not "secret" as electronic communications are commonly known to be transmitted and received as digital records and Plaintiff was even made aware of any such "interception" via the privacy statement on Cabela's website. In fact, the concept of imposing civil and criminal liability for "recording" electronic communications is antithetical to the very nature of an electronic communication. Unlike oral or wire communications, which consist of oral communications uttered and aural transfers made, **sound-based transfers** that necessarily dissipate upon receipt unless they are recorded, electronic communications by their nature are recorded when they are transmitted. Indeed, it is only in the recording of an electronic communication that such a communication exists. *See Com. v. Proetto*, 771 A.2d 823, 829 (2001) ("While engaging in a conversation over the telephone, a party would have no reason to believe that the other party was taping the conversation. Any reasonably intelligent person, savvy enough to be using the Internet, however, would be aware of the fact that messages are received in a recorded format, by their very nature, and can be downloaded or printed by the party receiving the message."), *aff'd*, 837 A.2d 1163 (Pa. 2003)

More specifically, Cabela's notifies its website users, including Plaintiff, via its publicly posted privacy statement (on the same website) that the company "may use third party-placed tracking pixels and Cookies and related or similar technologies to help us understand how to improve the customer experience on our Sites, to personalize our content, and to develop and improve our products and services, including advertising." Cabela's Privacy and Security Statement, https://www.cabelas.com/shop/en/privacy-policy-summary-cabelas (Sep. 17, 2022) (last visited Nov. 28, 2022).[2]

---

[2] The Declaration of Alex Dennee (including Exhibit A to the declaration) is marked as Exhibit 1 to this Motion.

Cabela's privacy statement continues, stating that the company "ha[s] collected the following categories of information from the listed sources, used it for the listed business purposes and shared it with the listed categories of third parties." *Id.* Within that list, Cabela's identifies:

| Categories Of Information Collected | Sources | Business Purposes* For Use | Categories Of Third Parties Receiving Information |
|---|---|---|---|
| * * * | | | |
| **Electronic network activity** (browsing or search history, website interactions, advertisement interactions) | Information automatically collected from site visitors. | Auditing relating to transactions; security detection, protection and enforcement; functionality debugging/error repair; ad customization; performing services for you; internal research and development; quality control. | Service providers and others, such as advertising and analytics partners; affiliated companies; law enforcement. |

*Id.*

The privacy statement then goes on to state that "the business purposes" for which the identified information is used, including browsing and website interactions, may include (1) "[p]erforming services" for its customers and website users; (2) "[a]dvertising customization"; (3) "[a]uditing relating to transactions, internal research and development," including "[t]o provide for internal business administration and operations, including troubleshooting, Site customization, enhancement or development, testing, research, administration and operation of our Sites and data analytics" and "[t]o measure performance of marketing initiatives, ads, and websites "powered by" another company on our behalf"; (4) "[s]ecurity detection, protection and enforcement; functionality debugging, error repair"; (5) "[d]ispute resolution"; and (6) "[q]uality control," including "[t]o develop and improve our products and services, for example, by reviewing visits to the Sites and various subpages, demand for specific products and services and user comments."

7

*Id.*

Thus, if Plaintiff did in fact use Cabela's website, the privacy statement disclosed the potential collection of data associated with a website user's browsing activity and website interactions. A reasonable person browsing Cabela's website would be alerted to the privacy statement and its bolded provisions directly applicable to Plaintiff's claims here. Cabela's potential "recording" or "interception" of Plaintiffs' activity on with Cabela's website was therefore not secretive. *See Marquis.*, SUCV2011-02808-BLS1; 2014 WL 4180400, at *14 ("Google was never secretive about its automated review of emails because there were multiple opportunities for an individual to become exposed to disclosures concerning the fact that Google conducted an automated review of emails"). As Cabela's capture of the purported data was not secretive, Plaintiff's claim under the Wiretap Statute should be dismissed.

### B. Plaintiff Does Not Allege Cabela's Intercepted Communication "Contents."

Not all data related to communications triggers the Wiretap Act. The interception at issue must be communication "contents." *Contents* means "information concerning identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." Mass. Gen. Laws ch. § 272. Massachusetts courts have exclusively found "contents" of wire communications under the Wiretap Statute to include text messages, passwords, and instant messages. *See Rich v. Rich*, No. 200701538, 2007 WL 4711508, at *3 (Mass. 2007) (finding "contents" to include passwords and instant messages); *Commonwealth v. Moody*, 466 Mass. 196, 207-209 (Mass. 2013) (finding text messages are held to be covered by the Wiretap Statute). Unlike the items listed above, mouse movements, mouse clicks, and URLs are not identifying information of Plaintiff or substance of communications. But this non-content information are all Plaintiff has alleged *might* have been implicated. Compl. ¶ 1. Plaintiff fails to

8

allege that he entered any keystrokes or that Cabela's collected those keystrokes.

Other courts interpreting analogous statutes have found that similar to a visitor's physical movements recorded through video surveillance at a Cabela's brick-and-mortar store, a visitor's "movements" on Cabela's website such as mouse clicks and movements are not "contents" because they "d[o] not convey the substance of any particular communication." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321–22 (S.D. Fla. 2021) (applying same analogy in a session replay class action and holding mouse movements, clicks, pages visited, and keystrokes, including information allegedly input by the plaintiff, were not "contents" under Florida's analogous wiretap statute); *see also, e.g.*, *Graham v. Noom, Inc*., No. 20-cv-06903-LB, 2021 WL 1312765, at *6 (N.D. Cal. Apr. 8, 2021) (dismissing plaintiff's wiretapping claim based on session replay "to the extent that it is predicated on non-content information"); *Jacome v. Spirit Airlines*, No. 2021-000947-CA-01, 2021 WL 3087860, at *4 (Fla. Cir. Ct. June 17, 2021) (dismissing plaintiff's wiretapping claim based on "mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff" because "this is precisely the type of non-record information that courts consistently find do not constitute 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message," and collecting cases).

Nor are URLs "content" under the Statute. A URL is a Uniform Resource Location, "used to identify the physical location of documents on servers connected to the internet." *In re Nickelodeon Consumer Priv. Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *15 (D.N.J. July 2, 2014) (internal quotation marks omitted). They are the pages of a website. For example, the URL for the U.S. District Court for the District of Massachusetts's website is https://www.mad.uscourts.gov. As another federal court has explained, a URL is a "file path" to

take a webpage visitor to a particular location, *i.e.*, a "file contained in a folder on a web server owned or operated by [the defendant]." *In re Nickelodeon*, 2014 WL 3012873, at *15. Put differently, "*location* identifiers," like URLs, "have classically been associated with non-content 'means of establishing communication.'" *In re Google, Inc.*, 806 F.3d at 136. Again, any purported capture or tracking of URLs within Cabela's websites (*i.e.*, which pages on a website the user visited) is closer to physical movements recorded through video surveillance in a store than they are to tracking the "contents" of conversations. They do not trigger the Wiretap Statute. At any rate, Plaintiff's allegations regarding URLs are irrelevant because Plaintiff does not allege that he browsed multiple pages on Cabela's website—and the session replay software could not have monitored URLs on Cabela's webpage if he alleges, at most, to have visited landing page.

Notably, Plaintiff's vague allegations regarding "keystrokes" do not save his claim. Compl. ¶ 1. Here, the only allegations in the Complaint that even mention keystrokes are paragraphs 1 and 25, but neither are specific to Plaintiff nor do they identify what, if any, purported keystrokes would constitute "content" under the Wiretap Statute. In fact, Plaintiff *never* alleges that he entered *any* information into cabelas.com during a purported visit. The screenshots included in the Complaint change nothing—none mentions Plaintiff and instead they discuss a hypothetical "website user." *Id.* ¶¶ 47–49. At most, Plaintiff offers vague and conclusory allegations that his "Website Communications" were captured by session replay code. *Id.* ¶ 46. But again, the purported "Website Communications" that *might* be at issue were identified in paragraph 1 of the Complaint to be limited to mouse movements, clicks, keystrokes, and URLs—as discussed, mouse movements, mouse clicks, and URLs are wholly insufficient, and Plaintiff never alleges to have entered keystrokes into cabelas.com.

When a website visitor moves or clicks a mouse or moves to a different page, the user is

directing the website to take him to a specific webpage or part of a webpage—that is not a conversation's contents or identifying information. Courts across the country are in accord—any purported tracking of mouse clicks and movements, as well as URLs and keystrokes were they at issue here, are wholly insufficient to state a wiretapping claim. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (clicks, pages visited, and keystrokes, including shipping and billing information, are not "contents" for wiretapping purposes); *Bums v. Heyns*, No. 1:14-cv-733, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) (holding that clickstream data containing "the time, order and duration the computer spent on each web page as well as which files were accessed and/or downloaded . . . does not convey the 'substance, purport, or meaning' of a prisoner's communication"). In sum, a visitor's movements on Cabela's website such as mouse clicks, mouse movements, and URLs at issue in this litigation are not "contents" because they do not convey the substance of any particular communication. This makes sense— "a claim of invasion of privacy requires an intrusion upon something over which a person has a reasonable expectation of privacy." *Massie v. Gen. Motors LLC*, No. CV 21-787-RGA, 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022). Because Plaintiff's claim under the Wiretap Statute fails to allege communication "contents" were captured, the claim should be dismissed for this reason alone.

### C.  Plaintiff Does Not Allege the Software Cabela's Uses Is A "Intercepting Device."

The Complaint contains just one conclusory allegation that "Session Replay Code, like that procured by Cabela's, is an 'intercepting device' used for the 'recording [of] a wire or oral communication' within the meaning of the Statute." Compl. ¶ 75. Such a conclusory allegation is insufficient to satisfy the federal pleading standards—it is, at best, a legal conclusion. Software code on a website, which is all that session replay technology is, is not a "device" within the term's

11

statutory definition in the Wiretap Statute. Plaintiff's claim independently fails for this reason.

The Wiretap Statute defines an "intercepting device" as "[a]ny ***device*** or ***apparatus*** which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication." Mass. Gen. Laws ch. 272 § 99(B)(3) (emphasis added). Interpreting the words of the statute according to "common and approved usage"—as required under Massachusetts law, Mass. Gen. Laws ch. 4 § 99(B)(3) —a "device" or "apparatus" must be tangible; it does not encompass intangible software code on a website. *See* Black's Law Dictionary (11th ed. 2019) (defining "device" as "[a] mechanical invention that may be "an apparatus or an article of manufacture," and defining "apparatus" with reference to "machine," which is defined as "[a] device or apparatus consisting of fixed and moving parts").

Indeed, consistent with this plain meaning, many courts have held that session replay and similar software are not a "device" or "apparatus" under similar wiretap laws. *See, e.g.*, *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome*, 2021 WL 3087860, at *5 (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784-WPD, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) (same); *Connor v. Whirlpool Corp.*, No. 21-CV-14180-WPD, 2021 WL 3076477, at *2 (S.D. Fla. July 6, 2021) (same); *cf. United States v. Ackies*, 918 F.3d 190, 199 n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under Federal Stored Communications Act because "software is not a 'device' under its plain meaning"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig. ("In re Sony I")*, 903 F. Supp. 2d 942, 972 (S.D. Cal. 2012) ("[S]oftware is not a tangible good or service."). Thus, as used in the Wiretap Statute, "intercepting device" does not include the session replay software at issue in this case.

12

This is an independent basis requiring dismissal of Plaintiff's Complaint.

For those reasons, or any particular one above, Plaintiff's claim, creating a novel interpretation of the Wiretap Statute, should be dismissed.

## II. Plaintiff's Invasion of Privacy Claim Fails Because Capturing of Plaintiff's Movement on Cabela's Public Website Did Not Invade Plaintiff's Solitude.

Plaintiff likewise fails to state a claim for invasion of privacy under Massachusetts law. To have a claim for invasion of privacy, the "invasion must be both unreasonable and substantial or serious." *Polay v. McMahon*, 10 N.E.3d 1122, 1126 (Mass. 2014). Invasion of privacy may be brought by a plaintiff if they can show an "unreasonable intrusion upon the plaintiff's solitude or seclusion." *Id.* (internal citation omitted).

Cabela's capturing Plaintiff's mouse movements, keystrokes, and URLs visited on its own website is not an intrusion upon Plaintiff's solitude. "Intrusion upon seclusion typically involves unwanted surveillance or other physical invasion…, unwanted contact constituting harassment …, or bodily intrusion such as drug testing." *Axford v. TGM Andover Park, LLC*, Case No.19-cv-11540-ADB, 2021 WL 681953 (D. Mass. Feb. 22, 2021). Plaintiff does not allege that there was any surveillance or physical invasion by Cabela's, let alone harassment or bodily intrusion. Cabela's did not "invade" Plaintiff's home or even his computer. Cabela's merely capturing Plaintiff's movement on Cabela's own public website is similar to Cabela's capturing Plaintiff's movement on a surveillance camera in Cabela's own store. Just as capturing one's movements in a public location would not be an invasion of one's solitude or seclusion, nor is Cabela's capturing Plaintiff's mouse movements and clicks on its public website. For that reason, Plaintiff's invasion of privacy claim should be dismissed for failure to plead a cognizable claim.

## III. Alternatively, Plaintiff Lacks Standing to Assert a Claim for Injunctive Relief.

Even if Plaintiff stated a plausible claim, he still lacks standing to seek an injunction. An

13

injunction is only appropriate to protect against future harm. Here, Plaintiff does not, *and cannot*, allege that he will visit cabelas.com without knowledge that the site employs session replay. Indeed, Plaintiff is clearly aware of the use of session replay on the website, and any future visit to the website will be made with such knowledge. Because Plaintiff cannot contend that he will suffer the future harm of visiting Cabela's website with session replay running without his knowledge, he lacks standing to pursue a claim for injunctive relief. *See, e.g.*, *Seidman v. Snack Factory, LLC*, Case No. 14-62547, 2015 WL 1411878 at *5 (S.D. Fla. Mar. 26, 2015) ("The Court agrees with Defendant's arguments that Plaintiff lacks standing to pursue the requested injunctive relief because he has not alleged intent to purchase Defendant's [product] in the future."). Even in data breach cases, courts around the country routinely deny declaratory relief involving past cyberattacks because it "will not provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *8 (S.D. Cal. Nov. 3, 2016).[3] Plaintiff's claims for injunctive relief should therefore be dismissed for lack of standing.

## CONCLUSION

For the reasons discussed herein, Cabela's respectfully requests that the Court dismiss Plaintiff's Complaint pursuant to Federal Rule 12(b)(6). Plaintiff does not state a viable claim—there was no Wiretap Statute violation, and there was invasion of privacy. Plaintiff also lacks standing to recover injunctive relief. The Complaint fails in its entirety.

---

[3] *Id.* (dismissing nearly claims in data breach case because "psychic satisfaction is not an acceptable Article III remedy"); *see also, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F. 3d 711, 718 (8th Cir. 2017) (same); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073 (C.D. Ill. 2016) (same).

Dated: January 6, 2023               Respectfully submitted,

By:     */s/ Alan Y. Wong*
    Alan Y. Wong (BBO# 687618)
    awong@shb.com
    Emyr T. Remy (BBO# 704156)
    remy@shb.com
    SHOOK, HARDY & BACON L.L.P.
    One Federal St., Ste. 2540
    Boston, MA 02110
    Tel: (617) 531-1411 | Fax: (617) 531-1602

    Alfred J. Saikali (*pro hac vice* forthcoming)
    asaikali@shb.com
    Jennifer A. McLoone (*pro hac vice* forthcoming)
    jmcloone@shb.com
    SHOOK, HARDY & BACON L.L.P.
    201 South Biscayne Blvd., Suite 3200
    Miami, Florida 33131
    Tel: (305) 358-5171 | Fax: (305) 358-7470

    ***Attorneys for Defendant Cabela's LLC***

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on January 6, 2023:

>Joseph P. Guglielmo
>Carey Alexander
>Ethan S. Binder
>**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
>The Helmsley Building
>230 Park Avenue, 17th Fl.
>New York, NY 10169
>Tel.: (212) 223-6444
>jguglielmo@scott-scott.com
>calexander@scott-scott.com
>ebinder@scott-scott.com
>
>Brian C. Gudmundson
>Michael J. Laird
>Rachel K. Tack
>**ZIMMERMAN REED LLP**
>1100 IDS Center
>80 South 8th Street
>Minneapolis, MN 55402
>Tel.: (612) 341-0400
>Brian.gudmundson@zimmreed.com
>Michael.laird@zimmreed.com
>Rachel.tack@zimmreed.com
>
>*Attorneys for Plaintiff*

By: */s/ Alan Y. Wong*
    Alan Y. Wong
    *Attorney for Defendant Cabela's LLC*