## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER MONTECALVO, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>CABELA'S INC.,<br><br>                Defendant. | Case No. 1:22-cv-11837-NMG |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CABELA'S LLC f/k/a/ CABELA'S INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL HISTORY AND BACKGROUND ..................................................... 2

III.    ARGUMENT ......................................................................................................... 3

    A.      Plaintiff Properly Pleads Interception Under the Massachusetts Wiretap Statute .. 3

        1.      Plaintiff Alleged Cabela's Use of Session Replay Code Was "Secret" ...... 3

        2.      Plaintiff's Website Communications Are Content Under Massachusetts Law ................................................................................................................. 7

        3.      The Session Replay Software Used by Cabela's Is an Intercepting Device Under Massachusetts Law ........................................................................ 12

    B.      Cabela's Unreasonably Invaded Plaintiff's Solitude ............................................ 12

        1.      Plaintiff Need Not Satisfy Defendant's Improper Standards Under Massachusetts Law .................................................................................... 13

        2.      Plaintiff's Allegations Satisfy the Actual Standards of the Massachusetts Statute and Relevant Authority ............................................................... 14

    C.      Plaintiff Alleges Standing to Assert a Claim for Injunctive Relief ..................... 16

IV.     CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Ajemian v. Yahoo!, Inc.*,
   83 Mass. App. Ct. 565 (Mass. App. Ct. 2013),
   *aff'd*, 84 N.E.3d 766 (Mass. 2017)...........................................................................................6

*Burns v. Heyns*,
   No. 1:14-CV-733, 2015 WL 4391983 (W.D. Mich. July 15, 2015).......................................11

*Cardoso v. Whirlpool Corp.*,
   No. 21-CV-60784, 2021 WL 2820822 (S.D. Fla. July 6, 2021)............................................11

*Com. v. Hyde*,
   598, 750 N.E.2d 963 (Mass. 2001) ..........................................................................................7

*Com. v. Jackson*,
   349 N.E.2d 337 (Mass. 1976) ............................................................................................4, 6

*Com. v. Mejia*,
   832 N.E.2d 693 (Mass. 2005) ..................................................................................................7

*Cook v. WHDH-TV, Inc.*,
   No. 941269, 1999 WL 1327222 (Mass. Super. Ct. Mar. 4, 1999).........................................13

*Coughlin v. Town of Arlington*,
   No. CA 10-10203, 2011 WL 6370932 (D. Mass. Dec. 19, 2011) ..........................................14

*Derby v. Jos. A. Bank Clothiers, Inc.*,
   No. CIV.A. 14-12347, 2014 WL 7361023 (D. Mass. Dec. 23, 2014)....................................16

*Dist. Att'y for Plymouth Dist. v. New England Tel. & Tel. Co.*,
   399 N.E.2d 866 (Mass. 1980) ..................................................................................................8

*Gilday v. Dubois*,
   124 F.3d 277 (1st Cir. 1997).....................................................................................................4

*Glik v. Cunniffe*,
   655 F.3d 78 (1st Cir. 2011).......................................................................................................4

*Goldstein v. Costco Wholesale Corp.*,
   559 F. Supp. 3d 1318 (S.D. Fla. 2021) ..................................................................................11

*Goldstein v. Luxottica of Am., Inc.*,
   No. 21-80546-CIV, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ........................................11

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................7

*Green v. Cosby*,
   99 F. Supp. 3d 223 (D. Mass. 2015) ....................................................................18

*In re: Application of the U.S. for an Order Authorizing the Use of a Pen Register
   and Trap on [XXX] Internet User Acct./User Name*,
   396 F. Supp. 2d 45 (D. Mass. 2005) ......................................................................9

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021).......................15

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015)....................................................................................9

*In re: Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003)........................................................................................9

*Jacome v. Spirit Airlines Inc.*,
   No. 2021-000947-CA-01, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)..........11

*Katz v. U.S.*,
   389 U.S. 347 (1967).............................................................................................13

*Makkinje v. Extra Space Storage, Inc.*,
   No. 8:21-CV-2234, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022).............................12

*Marquis v. Google, Inc.*,
   No. 11-2808, 2012 WL 12929513 (Mass. Super. Ct. Jan. 17, 2012)...................4, 5

*McLaughlin v. Meehan*,
   No. 1681CV00866, 2018 WL 1041371 (Mass. Super. Ct. Jan. 19, 2018) .........13, 14, 15

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...............................................................................6

*Polay v. McMahon*,
   468 Mass. 379 (2014) ...........................................................................................13

*Popa v. Harriet Carter Gifts, Inc.*,
   426 F. Supp. 3d 108 (W.D. Pa. 2019)..................................................................6, 10

*Popa v. Harriet Carter Gifts, Inc.*,
   52 F.4th 121 (3d Cir. 2022) ................................................................................1, 12

*Project Veritas Action Fund v. Rollins*,
   982 F.3d 813 (1st Cir. 2020)..................................................................................4

*Revitch v. New Moosejaw, LLC*,
   No. 18-CV-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................10

*Rich v. Rich*,
   No. BRCV200701538, 2011 WL 3672059 (Mass. Super. Ct. July 8, 2011)..................4, 9, 12

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................................................................................11

*Smith v. Maryland*,
   442 U.S. 735 (1979)..................................................................................................................8

*Swiggum v. EAN Servs., LLC*,
   No. 8:21-CV-493, 2021 WL 3022735 (M.D. Fla. July 16, 2021) ...........................................11

*U.S. v. Councilman*,
   418 F.3d 67 (1st Cir. 2005)......................................................................................................4

*U.S. v. Forrester*,
   512 F.3d 500 (9th Cir. 2007) ...................................................................................................9

*U.S. v. Hutchins*,
   361 F. Supp. 3d 779 (E.D. Wis. 2019).....................................................................................12

*Wofse v. Horn*,
   523 F. Supp. 3d 122 (D. Mass. 2021) ......................................................................13, 14, 15

*Wolfson v. Lewis*,
   924 F. Supp. 1413 (E.D. Pa. 1996) ........................................................................................15

*Woo v. Spackman*,
   988 F.3d 47 (1st Cir. 2021)......................................................................................................7

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................................................................11

**STATUTES, RULES, AND REGULATIONS**

CAL. PENAL CODE
   §631(a) ....................................................................................................................................11

FLA. STAT.
   §934.02(7).................................................................................................................................7
   §934.02(12)(c) ........................................................................................................................11

Mᴀss. Gᴇɴ. Lᴀᴡs
    ch. 214, §1 ...........................................................................................................3
    ch. 214, §1B ................................................................................................1, 13
    ch. 272, §99 .........................................................................................................3
    ch. 272, §99(A) ...................................................................................................3
    ch. 272, §99(B)(3) .............................................................................................12
    ch. 272, §99(B)(4) ...............................................................................................4
    ch. 272, §99(B)(5) ..................................................................................7, 9, 10
    ch. 272, §99(Q) ...................................................................................................1

18 U.S.C.A.
    §2510(8) ...............................................................................................................7

**Oᴛʜᴇʀ Aᴜᴛʜᴏʀɪᴛɪᴇs**

Brooke Auxier et al.,
    *Americans' attitudes and experiences with privacy policies and laws*, Pᴇᴡ
    Rᴇsᴇᴀʀᴄʜ Cᴇɴᴛᴇʀ, (Nov. 15, 2019), ........................................................5

Brooke Auxier et al.,
    *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control
    Over Their Personal Information*, Pᴇᴡ Rᴇsᴇᴀʀᴄʜ Cᴇɴᴛᴇʀ, (Nov. 15, 2019), .......................5

Restatement (Second) of Torts
    §652B ................................................................................................................13

Plaintiff Peter Montecalvo ("Plaintiff" or "Montecalvo") respectfully submits this Memorandum of Law in Opposition to Defendant Cabela's LLC f/k/a Cabela's Inc.'s ("Cabela's" or "Defendant") Motion to Dismiss Plaintiff's Complaint (the "Motion"). For the reasons set forth herein, Defendant's Motion should be denied.

## I.     INTRODUCTION

Cabela's secretly intercepts and records the personal and private electronic communications of Massachusetts visitors to its website, www.cabelas.com, using an undisclosed "Session Replay Code" (defined *infra*). Cabela's surreptitiously embeds the Session Replay Code into each website visitor's electronic device, which intercepts and records every move Plaintiff and the Class made on Cabela's website in real-time. Cabela's use of this technology violates its users' privacy expectations and Massachusetts's wiretap and privacy laws.

Courts across the country have held that the unbridled use of the Session Replay Code to secretly intercept and record website visitors' communications constitutes wiretapping claims under those states' wiretapping laws. *See, e.g.*, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022). Here, Plaintiff has sufficiently pled claims under Massachusetts's Wiretapping Statute (the "Wiretap Statute" or "Statute"), MASS. GEN. LAWS ch. 272, §99(Q), and asserted invasion of privacy under Massachusetts law, MASS. GEN. LAWS ch. 214, §1B. Plaintiff has properly pled his claim under the Wiretap Statute by alleging that Cabela's secretly intercepted his communications using an intercepting device, as defined by the Statute. Plaintiff also sufficiently pled that Cabela's captured his data, communications, and movements on www.cabelas.com and, thereby, intruded on his seclusion and solitude. Finally, Plaintiff has also sufficiently pled standing for each of his claims. Thus, the Court should deny Cabela's Motion in its entirety.

## II.     FACTUAL HISTORY AND BACKGROUND

This is a class action brought against Cabela's for wiretapping the personal and private electronic communications of visitors to its website, www.cabelas.com, without their consent. Class Action Complaint ("CAC"), ¶1.  Cabela's procures and directs third-party vendors, such as Microsoft Corporation (these vendors are referred to herein as the "Session Replay Providers") to embed snippets of JavaScript computer code on Cabela's website, which then deploys on each website visitor's internet browser for the purpose of intercepting and recording the website visitor's electronic communications with Cabela's website ("Session Replay Code").  These third-party vendors create and deploy the Session Replay Code at Cabela's request.  *Id.*

Unlike other online advertising tools, Session Replay Code allows a website to capture and record every action a website visitor takes while visiting the website, including action that reveals the visitor's personal or private sensitive data and instances when the visitor does not intend to submit the data to the website operator, or has not finished submitting the data to the website operator.  *Id.*, ¶23.  The events and data intercepted by Session Replay Code can include mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications in real-time ("Website Communications").  *Id.*, ¶1.  The Session Replay Code does nothing to anonymize user sessions, either.  *Id.*, ¶30.  Identifying information will become known and visible to the Session Replay Provider and the website owner, and often Session Replay Providers create "fingerprints that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information."  *Id.*, ¶¶31, 34.

After intercepting and recording the Website Communications, Cabela's and the Session Replay Providers use those Website Communications to review website visitors' entire visit to www.cabelas.com, create a video replay of the user's behavior, analyze the behavior, and use that

information to increase sales.  *Id.*, ¶¶2, 13.  Cabela's procurement of the Session Replay Providers to secretly deploy the Session Replay Code results in the electronic equivalent of "looking over the shoulder" of each visitor to the Cabela's website for the entire duration of their website interaction.  *Id.*, ¶2.  Cabela's wiretapping with Session Replay Code is ongoing and continues to present legitimate harm to website visitors, all while Cabela's benefits from the consumer data, which increases Cabela's ability to generate profits.  *Id.*, ¶¶13-15, 50, 81, 95.  Cabela's conduct violates the Massachusetts Wiretapping Statute, MASS. GEN. LAWS ch. 272, §99, the Massachusetts Invasion of Privacy Statute, MASS. GEN. LAWS ch. 214, §1, and constitutes a general invasion of the privacy rights of website visitors.  *Id.*, ¶3.

## III.   ARGUMENT

### A.   Plaintiff Properly Pleads Interception Under the Massachusetts Wiretap Statute

The Massachusetts Wiretap Statute is one of the most restrictive in the nation.  Indeed, the Statute's purpose seeks to prohibit the "unrestricted use of ***modern electronic surveillance*** devices."  MASS. GEN. LAWS ch. 272, §99(A).[1]  Contrary to Defendant's argument, Plaintiff has sufficiently alleged that Defendant intercepted Plaintiff's communications by embedding the Session Replay Code onto its website for the specific purpose of recording Plaintiff's activities without Plaintiff's consent, knowledge, or approval.

#### 1.   Plaintiff Alleged Cabela's Use of Session Replay Code Was "Secret"

Cabela's argues that any "interception" of Plaintiff's actions was not secret and was otherwise known to Plaintiff and the Class through Cabela's website.[2]  The Statute defines

---

[1]    Unless otherwise noted, all emphasis is added and internal citations are omitted.

[2]    Cabela's makes the audacious claim that the "concept of imposing civil and criminal liability for 'recording' electronic communications is antithetical to the very nature of an electronic communication" because electronic communications "by their nature are recorded when they are transmitted."  *See* Defendant's Memorandum of Law in

"interception" to mean "to secretly hear, secretly record, or aid another to secretly hear or secretly record the contents of any wire or oral communication. . . ." MASS. GEN. LAWS ch. 272, §99(B)(4). "Massachusetts courts have interpreted this 'secrecy' requirement literally." *Gilday v. Dubois*, 124 F.3d 277, 288–89 (1st Cir. 1997). A non-consensual "recording is made 'secretly' -- and thus in violation of Section 99 -- if the person recorded does not have 'actual knowledge of the recording.'" *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 828 (1st Cir. 2020); *Com. v. Jackson*, 349 N.E.2d 337, 340 (Mass. 1976) ("[A]ctual knowledge is proved where there are clear and unequivocal objective manifestations of knowledge[.]"). The secrecy inquiry thus "turns on notice, *i.e.*, whether, based on objective indicators [. . .] one can infer that the subject was aware that she might be recorded." *Glik v. Cunniffe*, 655 F.3d 78, 86–87 (1st Cir. 2011).

Here, Plaintiff specifically alleged that he "did not consent to, authorize, or know about" Cabela's use of Session Replay Code, and "never agreed that Cabela's could collect or disclose [his] Website Communications." CAC, ¶86; *see also* ¶79 (Plaintiff "did not consent to having [his] Website Communications wiretapped."); ¶46 ("***Unknown to Plaintiff***, Cabela's procures and embeds Session Replay Code on its website"). At the pleading stage, where the Court must draw inferences in Plaintiff's favor, the Court cannot accept Cabela's invitation to ignore Plaintiff's specific allegations. *See Marquis*, 2012 WL 12929513, at *3 ("[T]he court accepts as true

---

Support of the Motion ("Def.'s Mem.") at 6. Courts have repeatedly rejected this argument as antithetical to the Massachusetts Wiretap Statute. *See, e.g.*, *Marquis v. Google, Inc.*, No. 11-2808, 2012 WL 12929513, at *2 (Mass. Super. Ct. Jan. 17, 2012) ("This court declines to accept Google's contention that the Massachusetts wiretap statute does not prohibit the secret interception of emails. . . . Permitting the interception of private emails, while prohibiting the same conduct for oral telephone conversations, is an inconsistency that contravenes the purpose of the statute."); *Rich v. Rich*, No. BRCV200701538, 2011 WL 3672059, at *5 (Mass. Super. Ct. July 8, 2011) ("[Defendant] argues that the Massachusetts Wiretap Act should be construed to exclude electronic communications. . . . That argument is not persuasive."); *see also U.S. v. Councilman*, 418 F.3d 67, 79 (1st Cir. 2005) ("We conclude that the term 'electronic communication' includes transient electronic storage that is intrinsic to the communication process for such communications. That conclusion is consistent with our precedent[]").

[Plaintiff]'s allegation that Google secretly intercepted her electronic communications with Gmail users.").

Cabela's argues that the Court should ignore Plaintiff's specific allegations, claiming a "reasonable person browsing Cabela's website would be alerted to [Cabela's] privacy statement[.]" Def.'s Mem. at 8. The Court cannot assume Plaintiff, or anyone, would be on notice of Cabela's privacy statement, which is buried at the bottom of its website.

Contrary to Cabela's claims, Plaintiff plausibly alleges that "most website visitors will assume their detailed interactions with a website will only be used by the website and not be shared with a third-party they know nothing about." CAC, ¶17. That claim is supported by research from the Pew Research Center, which states that "[w]hile nearly all Americans are asked to agree to terms and conditions of a company's privacy policy, relatively few report reading these policies on a regular basis." *See* Brooke Auxier et al., *Americans' attitudes and experiences with privacy policies and laws*, PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-attitudes-and-experiences-with-privacy-policies-and-laws/; *see also* CAC, ¶20 ("[A] majority of Americans, approximately 79%, are concerned about how data is collected about them by companies[]") (citing Brooke Auxier et al., *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information*, PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/)).

Further, while the Court should disregard Cabela's privacy statement as beyond the four corners of the complaint, *Marquis*, 2012 WL 12929513, at *3 ("Google's attempt to introduce documents outside the pleadings is improper at the motion to dismiss stage[]"), even if the Court

were to consider Cabela's privacy statement, it hardly provides the "clear and unequivocal objective manifestations of knowledge" required, *Jackson*, 349 N.E.2d at 340,[3] because it states only that Cabela's "***may*** use third party-placed tracking pixels and Cookies and related or similar technologies[.]"  Def.'s Mem. at 6; Def.'s Mem., Ex. 1, Decl. at 9.   While Cabela's argues the privacy statement discloses that Cabela's "ha[s] collected" certain information, Def.'s Mem. at 7 (brackets in original), the policy itself undermines any actual knowledge by later stating: "Not all information is collected about all individuals.  For instance, we may collect different information from applicants for employment, vendors or customers."   Def.'s Mem., Ex. 1, Decl. at 9. Moreover, disclosing the use of cookies and tracking technologies—generally used for advertisement placement—does not inform website visitors of the far more invasive practice Plaintiff alleges Cabela's undertook here, namely, the surreptitious capture, recording, review, and analysis of all of Plaintiff's activities and actions on Cabela's website.

On these facts, Plaintiff has sufficiently alleged a "secret" recording within the meaning of the Statute.  *Cf. Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 119 (W.D. Pa. 2019) ("Whether the agreement provided actual notice or inquiry notice are important questions of fact. . . .  The Court cannot determine if Defendants afforded Popa actual or inquiry notice without a more developed record and additional briefing.").

---

[3]        At most, Cabela's privacy statement constitutes unenforceable browsewrap.  "[W]here, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.  Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.  Where the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75 (Mass. App. Ct. 2013), *aff'd*, 84 N.E.3d 766 (Mass. 2017).

### 2. Plaintiff's Website Communications Are Content Under Massachusetts Law

Under the Massachusetts Statute, the term "'contents', when used with respect to any wire or oral communication, means any information concerning the identity of the parties to such communication or the existence, contents, substance, purport, or meaning of that communication." MASS. GEN. LAWS ch. 272, §99(B)(5).

Cabela's argues that "[o]ther courts interpreting" supposedly "analogous statutes" have found Session Replay Code does not record "contents." The purportedly "analogous statutes" Cabela's invokes, however, are materially different:

| Massachusetts Law | Federal Law | Florida Law |
|---|---|---|
| "The term 'contents', when used with respect to any wire or oral communication, means any information concerning ***the identity of the parties to such communication or the existence, contents***, substance, purport, or meaning of that communication." MASS. GEN. LAWS ch. 272, §99(B)(5). | "'[C]ontents', when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." 18 U.S.C.A. §2510(8).[4] | "'Contents,' when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication." FLA. STAT. §934.02(7). |

Massachusetts courts have emphasized both that "contents" under the Statute "is defined broadly," *Com. v. Mejia*, 832 N.E.2d 693, 697 (Mass. 2005), and that there should be "no doubt that the plain language of the [S]tatute accurately states the Legislature's intent." *Com. v. Hyde*, 598, 750 N.E.2d 963, 966 (Mass. 2001); *see also Woo v. Spackman*, 988 F.3d 47, 51 (1st Cir. 2021) ("[C]ourts should strive to interpret statutes so that each word in the statutory text has meaning.").

---

[4] California law, like Florida law, tracks the Federal Wiretap Act. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same.").

The Massachusetts Statute expressly defines "contents" to include information concerning "the identity of the parties to such communication or the existence" of that communication.  This definition casts a far broader sweep than the Federal or Florida wiretap statutes.  For example, while pen registers, which "disclose only the telephone numbers that have been dialed" and "do not acquire the *contents* of communications" within the meaning of Federal law, *Smith v. Maryland*, 442 U.S. 735, 741 (1979) (emphasis in original), under Massachusetts law, "the recording of the telephone number [. . .] is 'information concerning the identity of' a party to a communication and concerning 'the existence . . . of that communication.'" *Dist. Att'y for Plymouth Dist. v. New England Tel. & Tel. Co.*, 399 N.E.2d 866, 869–70 (Mass. 1980) (second ellipsis in original).  Massachusetts's Supreme Judicial Court has emphasized that these "differences between our statute and the Federal wiretap statute" are "meaningful," *id.*, and should not, as Cabela's implies, be ignored.

Plaintiff alleges that Cabela's intercepts several types of content, including the collection of every keystroke, click, and mouse movement, as well as URLs, location information (*i.e.*, IP addresses), and searches made by Plaintiff and the Class within Cabela's website.  CAC, ¶¶1, 9, 43.  Though Cabela's disputes whether Plaintiff entered keystrokes into Cabela's website, Def.'s Mem. at 10, Plaintiff plainly alleges: "While in Massachusetts, Plaintiff visited www.cabelas.com on his computer, smartphone, and iPad to search for hunting and fishing gear."  CAC, ¶43; *see also* ¶44 ("Plaintiff has consistently visited Cabela's website between 2010 and through 2021.  Specifically, since 2019, Plaintiff visited the Cabela's website on his laptop, smartphone, and iPad, approximately one to three times each year while in Massachusetts."); ¶1 (alleging Cabela's intercepts "mouse movements, clicks, [and] keystrokes (such as text being entered into an information field or text box)").  Drawing inferences in Plaintiff's favor, as the Court must at this

stage, common sense confirms that Plaintiff's "search" included entering keystrokes into Cabela's website. The capture of these keystrokes constitutes an interception of "contents." *Rich*, 2011 WL 3672059, at *6. Even if Plaintiff's search was conducted entirely by clicks and mouse movements, however, because the purpose of those acts was to "search for hunting and fishing gear," CAC, ¶43, such acts constitute "information concerning the . . . contents . . . of that communication," MASS. GEN. LAWS ch. 272, §99(B)(5), and thus constitutes an interception of "contents" under the Statute.

Plaintiff also alleges—and Cabela's does not dispute—that Cabela's intercepted the URLs of the web pages Plaintiff visited on Cabela's website. CAC, ¶1. URLs may constitute "contents," even under Federal law. "[Q]ueried URLs can be content as well as routing information, for instance in the case of URLs that reproduce search engine inquiries[. . . .]  [S]ome, if not most, queried URLs do contain content." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 138 (3d Cir. 2015) ("[P]ost-domain name portions of the URL are designed to communicate to the visited website which webpage content to send the user[]"); *see also U.S. v. Forrester*, 512 F.3d 500, 510 n.6 (9th Cir. 2007) ("A URL, unlike an IP address, identifies the particular document within a website that a person views and thus reveals much more information about the person's Internet activity[]"); *In re: Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003); *Undated Opinion of the Foreign Intelligence Surveillance Court*, No. A213-228 (FISA Ct.) (URLs can contain contents); *In re: Application of the U.S. for an Order Authorizing the Use of a Pen Register and Trap on [XXX] Internet User Acct./User Name*, 396 F. Supp. 2d 45 (D. Mass. 2005) (same). Plaintiff alleges and demonstrates through the analysis of the Session Replay Code on Cabela's website that "if a website user looks at product, that information is captured by the Session Replay Code embedded on the website." CAC, ¶48. Plaintiff alleges that Cabela's wiretap

intercepted all search queries, all Cabela's webpages visited, and all communications regarding Plaintiff's potential interest in Cabela's products, such as hunting and fishing gear.[5]  *Id.*, ¶¶35, 55.

Further, Plaintiff alleges that Cabela's can identify individual users by reference to "the user's IP address (*i.e.*, without requiring the user to manually input an address)," *id.*, ¶9, and can create "'fingerprints' that are unique to a particular user's combination of computer and browser settings, screen configuration, and other detectable information."  CAC, ¶34.  The collection of such information constitutes "information concerning the identity of the parties to such communication" under Mass. Gen. Laws ch. 272, §99(B)(5), and thus represents a further interception of "content" within the meaning of the Statute.

Cabela's attempts to brush aside its pervasive online surveillance by analogizing it to a "visitor's physical movements recorded through video surveillance at a Cabela's brick-and-mortar store."  Def.'s Mem. at 9.  Courts have rejected this exact analogy as flawed.  *See Revitch v. New Moosejaw, LLC*, No. 18-CV-06827, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Admittedly, a customer in brick-and-mortar store does not communicate by searching through the inventory.  But the same is not true for off-site shoppers: a customer who calls to inquire about a store's products undoubtedly communicates with the retailer.  As does an online patron.").

Notably, several of the decisions Cabela's relies upon interpret Florida law, which differs materially from Massachusetts law.  Unlike the Massachusetts Statute, Florida's Security of Communications Act ("FSCA") contains an express statutory exception from the definition of

---

[5]       Though the Court should disregard Cabela's privacy statement as beyond the four-corners of the Complaint, to the extent the Court considers it, Cabela's proffered interpretation bolsters the plausibility of Plaintiff's allegations.  Cabela's points to language in its privacy statement claiming that Cabela's may intercept "Electronic network activity" such as "browsing or search history, website interactions, [and] advertisement interactions," as well information about Plaintiff's and Class members' "Identifiers," including their "unique personal identifier, IP address."  Def.'s Mem., Ex. 1, Decl. at 5 & 9.  *But see Popa*, 426 F. Supp. 3d at 119 ("[T]he Court is not disposed to rule on whether any of it constituted 'content' under WESCA as a matter of law at this juncture.  The Court will be better equipped to do so after a record is developed that places the alleged conduct of Defendants into context vis-à-vis the nature of 'content' for a claim under WESCA[]").

electronic communication such that it "does not include [. . .] [a]ny communication from an electronic or mechanical device which permits the tracking of the movement of a person or an object." FLA. STAT. §934.02(12)(c); *see also Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. 2021) (denying motion to dismiss under California law because no "similar exemption exists under Cal. Penal Code §631(a)"). The cases Cabela's invokes thus provide no guidance as to how to properly interpret the Massachusetts Statute. *See Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, at *3 (Fla. Cir. Ct. June 17, 2021) ("Session replay software is thus ***definitionally excluded*** from the term 'electronic communications' in both the Federal Wiretap Act and the FSCA[]"); *Swiggum v. EAN Servs., LLC*, No. 8:21-CV-493, 2021 WL 3022735, at *2 (M.D. Fla. July 16, 2021) ("The Court adopts the analysis and reasoning presented in [*Jacome*]"); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) ("[T]he plain language of the statute exempts the sort of tracking that triggered this action[]"); *Cardoso v. Whirlpool Corp.*, No. 21-CV-60784, 2021 WL 2820822, at *2 (S.D. Fla. July 6, 2021) ("[T]he FSCA does not apply to the plaintiff's claims regarding session replay technology software on a commercial website and that holding alone is sufficient for dismissal with prejudice[]"); *Goldstein v. Luxottica of Am., Inc.*, No. 21-80546-CIV, 2021 WL 4093295, at *3 (S.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, No. 21-80546-CIV, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) ("[T]he FSCA does not extend to the session replay software at issue in this case[]"). These cases are thus inapposite, as are the cases Cabela's cites that rely on Federal wiretap statute law. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 & n.32 (C.D. Cal. 2021) (analyzing meaning of "contents" under Federal law); *Burns v. Heyns*, No. 1:14-CV-733, 2015 WL 4391983, at *18 (W.D. Mich. July 15, 2015) (same).

Plaintiff has plausibly alleged the interception of "contents" under the Massachusetts Statute.

### 3. The Session Replay Software Used by Cabela's Is an Intercepting Device Under Massachusetts Law

The Massachusetts Statute broadly defines "intercepting device" to include, in relevant part, "***any*** device or apparatus which is capable of transmitting, receiving, amplifying, or recording a wire or oral communication." MASS. GEN. LAWS ch. 272, §99(B)(3). Nevertheless, citing non-Massachusetts authority, Cabela's asks the Court to hold that the Statute's reference to "device or apparatus" has an implied requirement of tangibility that excludes "intangible software code on a website[.]" Def.'s Mem. at 12. Massachusetts law is clear, however, that software that can log keystrokes, which is even more elementary than the Session Replay Code at issue here, is an "intercepting device" because it "is capable of ... recording a wire ... communication." *Rich*, 2011 WL 3672059, at *6 (ellipses in original); *accord Popa*, 426 F. Supp. 3d at 116–17 (denying motion to dismiss claims involving session replay code); *Makkinje v. Extra Space Storage, Inc.*, No. 8:21-CV-2234, 2022 WL 80437, at *2 (M.D. Fla. Jan. 7, 2022) (denying motion to dismiss claims involving session replay software because "software can constitute a 'device' in the wiretapping context"). These cases are hardly outliers. "The majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the Wiretap Act." *U.S. v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases).

The Court should accordingly deny Cabela's Motion.

### B. Cabela's Unreasonably Invaded Plaintiff's Solitude

Defendant argues that its intrusion upon Plaintiff's solitude was not unreasonable because it did not involve "unwanted surveillance or other physical invasion," and therefore Plaintiff's invasion of privacy claim must fail. Def.'s Mem. at 13. Defendant is incorrect as a matter of law.

## 1.     Plaintiff Need Not Satisfy Defendant's Improper Standards Under Massachusetts Law

To begin, Defendant's factual arguments are premature, because the reasonableness of Cabela's alleged intrusion of Plaintiff's privacy is a fact question that cannot be decided on a motion to dismiss.  *McLaughlin v. Meehan*, No. 1681CV00866, 2018 WL 1041371, at *10 (Mass. Super. Ct. Jan. 19, 2018) (citing *Polay v. McMahon*, 468 Mass. 379, 382 (2014)); *see also Cook v. WHDH-TV, Inc.*, No. 941269, 1999 WL 1327222, at * 5 (Mass. Super. Ct. Mar. 4, 1999) (applying a balancing test for "reasonableness" (there, of recording the plaintiff in a public place) and holding a jury should weigh the relevant factors, including (1) defendant's motive for the intrusion; (2) the extent or invasiveness of the intrusion; (3) the reasonableness of plaintiff's privacy expectation; (4) whether the plaintiff consented; and (5) the public importance of the information garnered). But moreover, Plaintiff is not required to allege unwanted surveillance or a physical intrusion to sufficiently plead an unreasonable intrusion in support of an invasion of privacy claim.[6]  Under the appropriate standard, Plaintiff here has sufficiently pled a claim for invasion of privacy under Massachusetts law.

Massachusetts law recognizes a statutory right to privacy.  MASS. GEN. LAWS ch. 214, §1B. The statute provides, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  *Id.*; *Polay*, 468 Mass. at 382; *Wofse v. Horn*, 523 F. Supp. 3d 122, 137 (D. Mass. 2021) (holding defendant must have "intruded unreasonably upon the plaintiff's

---

[6]     An invasion of privacy is not limited to the physical breach of a perimeter.  Rather, numerous cases of actionable intrusions involve non-trespassory intrusions upon or into a physical environment or location in which plaintiff has a "reasonable expectation of privacy" despite the absence of a technical trespass or physical intrusion. Restatement (Second) of Torts §652B and comm. b (1977) ("[The invasion] may also be by use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars or tapping his telephone wires.  It may be by some other form of investigation or examination into his private concerns[]"); *see also Katz v. U.S.*, 389 U.S. 347, 351 (1967) (considering the Fourth Amendment, but recognizing that privacy laws protect people, not places).

'solitude' or 'seclusion'").  "In determining whether a defendant committed an unreasonable intrusion, [the court] balance[s] the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *McLaughlin*, 2018 WL 1041371, at *10 (brackets in original).

On its face, the balancing analysis is simple here, as the only purpose for Cabela's privacy intrusion that it has proffered is the improved design, functionality, and user experience of its customer-facing website.  Def.'s Mem. at 1.  Even assuming this is Cabela's **only** justification for deploying Session Replay Code—a fact that will be tested through discovery—it does not constitute a legitimate purpose.  Generally, a legitimate purpose involves some form of public or workplace safety element.  *See Coughlin v. Town of Arlington*, No. CA 10-10203, 2011 WL 6370932, at *11 (D. Mass. Dec. 19, 2011) (holding "[r]easonable intrusions include urinalysis testing to ensure that police cadets are not using drugs, [. . .] ordering a psychiatric evaluation of a train engineer to ensure he could perform his job safely, [. . .] and random drug testing to ensure that employees do not operate company vehicles while intoxicated").  Cabela's reason for tracking Plaintiff and the Class members is not about safety; it is self-serving and utilized by Cabela's to increase sales.  CAC, ¶¶13-15, 87, 93.  Thus, the intrusion upon Plaintiff's privacy clearly outweighs Cabela's illegitimate intrusion.

### 2.     Plaintiff's Allegations Satisfy the Actual Standards of the Massachusetts Statute and Relevant Authority

Section 1B of the Massachusetts Statute is framed in broad terms so that the courts can develop the law thereunder on a case-by-case basis.  *Wofse*, 523 F. Supp. 3d at 137.  To assess whether there has been an intrusion that is unreasonable, as well as substantial or serious, Massachusetts courts examine the following factors: "location of the intrusion, the means used,

the frequency and duration of the intrusion, and the underlying purpose behind the intrusion." *Id.* These factors establish the unreasonableness of Cabela's intrusion upon Plaintiff's solitude.

First, Cabela's intruded upon Plaintiff's privacy in Massachusetts while he was on his personal devices, including his smartphone, iPad, and laptop. CAC, ¶5. Cabela's tracking included Plaintiff's and the Class members' personal thoughts, ideas, and communications, which may have included sensitive data, while on www.cabelas.com, which are intensely personal. *See McLaughlin*, 2018 WL 1041371, at \*10 (finding that information contained on a person's private computer, including a person's thoughts, ideas, and communications are "intensely personal"). Plaintiff and the Class members did not consent, in any form, to this intrusion. CAC, ¶¶59, 79, 81, 86, 88, 95. Plaintiff, and any reasonable person would rationally expect, outside of consent, that activity on a personal device, no matter where the device is used, is private. *Id.*, ¶¶16-17, 19, 21, 59, 79, 81, 86, 88, 95; *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 n.7 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1684 (2021) ("[I]ndividuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent[]"). Plaintiff's allegations that Cabela's recorded Plaintiff and the Class on their personal, private devices support unreasonableness.

Second, the means by which Cabela's tracked and recorded its online visitors was highly invasive and users would not expect or detect the invasion on a routine visit to the website. Cabela's secretly included Session Replay Code on its website to record Plaintiff and other website visitors. This Session Replay Code allowed the website to capture and record nearly every action website visitors took while visiting the site, including actions that revealed the visitors' sensitive and private data. CAC, ¶23; s*ee Wolfson v. Lewis*, 924 F. Supp. 1413, 1433-34 (E.D. Pa. 1996) (noting that one of the most significant intrusions on plaintiffs' privacy was defendants'

15

interception in a private home—this "greatly intruded" on their solitude, becoming "a substantial burden to their existence[]").  Here again, Plaintiff's allegations that Cabela's secretly recorded Plaintiff and the Class on their personal, private devices from which they input, or partially submitted, sensitive information support unreasonableness.

Third, the Session Replay Code tracked every move Plaintiff and the Class members made, every time they visited www.cabelas.com for the entirety of their Website Sessions, in real time. CAC, ¶1.  This is unfiltered, non-stop recording.  Secretly recording Plaintiff and the Class for the entirety of their website visits, every time they visit www.cabelas.com, also supports unreasonableness.

Fourth, as previously stated, Cabela's purpose for intruding upon Plaintiff's and the Class members' solitude was for unilateral, monetary gain.  *Id.*, ¶¶13-15, 87, 93.  Cabela's business motives for recording consumer behavior cannot possibly outweigh those consumers' privacy interests.  This is especially true in light of consumers' expectation that website providers obtain consent before collecting and sharing consumer data.  *Id.*, ¶18.  Thus, taken together, whether Cabela's intrusion of Plaintiff's and the Class members' privacy was unreasonable is a fact intensive inquiry, and inappropriate for a motion to dismiss.  At this stage, Plaintiff's factual allegations establish unreasonableness and sufficiently state a claim for invasion of privacy.

### C.    Plaintiff Alleges Standing to Assert a Claim for Injunctive Relief

Plaintiff has sufficiently pled a claim for injunctive relief because Defendant's conduct is ongoing.  Massachusetts courts recognize that a consumer may "maintain a class action for injunctive relief even where he will be able to 'avoid the cause of the injury thereafter,' as long as defendant's conduct is ongoing."  *Derby v. Jos. A. Bank Clothiers, Inc.*, No. CIV.A. 14-12347, 2014 WL 7361023, at *7 (D. Mass. Dec. 23, 2014).

16

Here, Cabela's contends that Plaintiff is not under the threat of future harm because Plaintiff is aware of Defendant's use of Session Replay Code on its website.  Def.'s Mem. at 14.  Defendant fails to cite any persuasive Massachusetts precedent for this assertion.  *Id.* (citing cases from the S.D. Fla. and the S.D. Cal.).  Moreover, Plaintiff here has squarely alleged that Cabela's conduct is ongoing and it has already recorded his activity on their website, allowing them to wrongly aggregate and use his information indefinitely.  The continued use of Plaintiff's information poses an ongoing threat of harm to his privacy interests.  As such, Plaintiff has sufficiently alleged that Cabela's conduct is ongoing and has identified a need for injunctive relief from this Court.  CAC, ¶¶50, 81, 95.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Cabela's Motion in its entirety.[7]

Dated: February 6, 2023                    Respectfully submitted,

                                           */s/ Joseph P. Guglielmo*
                                           Joseph P. Guglielmo (BBO #671410)
                                           Carey Alexander
                                           Ethan S. Binder
                                           **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
                                           The Helmsley Building
                                           230 Park Avenue, 17th Fl.
                                           New York, NY 10169
                                           Tel.: (212) 223-6444
                                           jguglielmo@scott-scott.com
                                           calexander@scott-scott.com
                                           ebinder@scott-scott.com

                                           Brian C. Gudmundson
                                           Michael J. Laird
                                           Rachel K. Tack
                                           **ZIMMERMAN REED LLP**
                                           1100 IDS Center
                                           80 South 8th Street
                                           Minneapolis, MN 55402
                                           Tel.: (612) 341-0400
                                           brian.gudmundson@zimmreed.com
                                           michael.laird@zimmreed.con
                                           rachel.tack@zimmreed.com

                                           *Counsel for Plaintiff*

---

[7]    If the Court determines the pleadings are deficient in any respect, Plaintiff requests leave to amend to cure any such deficiencies. *See Green v. Cosby*, 99 F. Supp. 3d 223, 225 n.1 (D. Mass. 2015) ("Leave to amend a complaint should be freely given").

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on February 6, 2023:

> Alan Y. Wong
> Emyr T. Remy
> **SHOOK, HARDY & BACON L.L.P.**
> One Federal St., Ste. 2540
> Boston, MA 02110
> awong@shb.com
> remy@shb.com
>
> *Attorneys for Defendant*

> */s/ Joseph P. Guglielmo*
> Joseph P. Guglielmo (BBO #671410)
> *Attorney for Plaintiff*

19