UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PETER MONTECALVO, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

CABELA'S LLC, f/k/a CABELA'S INC.,

        Defendant.

Case No. 1:22-cv-11837-NMG

**DEFENDANT CABELA'S LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

Plaintiff's response to Cabela's Motion to Dismiss does nothing to address any of the grounds for dismissal raised. Plaintiff's Opposition purportedly cites to binding authority and national "majority" consensus. However, as explained below, those cases are easily distinguishable from the instant case and, in some cases, interpreted incorrectly. The claims against Cabela's should be dismissed pursuant to Rule 12(b)(6).

I. **Plaintiff Has Not Pleaded A Claim Under the Massachusetts Wiretap Statute.**

Plaintiff claims in his Opposition that "[c]ourts across the country have held that the unbridled use of the Session Replay Code … constitutes wiretapping claims under those states' wiretapping laws." Opp., p. 1. However, he cites to only one case for this proposition, *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121 (3d Cir. 2022).[1]

Notably, the *Popa* decision did not – as Plaintiff implies – impose state wiretap law liability on the defendant website operator in that case. Rather, the Third Circuit merely reversed the prior granting of summary judgment by the trial court, finding that genuine issues of material fact existed that would control the outcome of that particular matter. *Id.* at 132-133. Plaintiff's Opposition is silent as to any other courts that have purportedly weighed in on the wiretap theories pertinent to this case. Conversely, as noted in Cabela's Motion, numerous courts that have considered session replay technology in the context of wiretap statutes have found in favor of Cabela's arguments.

    A. **Cabela's privacy statement, which the court can consider, makes clear that there was no "secret" recording here.**

Cabela's use of session replay on its website cannot constitute a "secret" recording required under the Wiretap Statute because Cabela's privacy statement discloses its use of website tracking technology. Plaintiff claims that this Court cannot consider Cabela's privacy statement as extrinsic

---

[1] Notwithstanding the fact that the *Popa* case concerns federal and Pennsylvania state wiretapping laws not at issue here, this Court is not bound by the holding of another circuit on a question of federal law. *See McLaughlin v. Unum Life Ins. Co. of Am.*, 212 F.R.D. 40, 43 (D. Me. 2002); *Clifford v. M/V Islander*, 882 F.2d 12, 14 (1st Cir. 1989).

evidence. However, this Court and the First Circuit have long held that "documents sufficiently referred to in the complaint and documents that are central to plaintiff's claim" can be considered at the motion to dismiss stage. *Denson v. Mici*, 581 F. Supp. 3d 330, 335 (D. Mass. 2022) (citations omitted). *See also In re Raytheon Sec. Litig.*, 157 F. Supp. 2d 131, 146 (D. Mass. 2001) ("In evaluating a motion to dismiss, the Court may consider documents pertinent to the action or referenced in the complaint."). Such documents "may be considered without converting a motion to dismiss into a motion for summary judgment." *Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (citation omitted).

Plaintiff's entire lawsuit is about Cabela's website, and his Complaint extensively references the website. It is therefore appropriate for this Court to consider the privacy policy on the website. As Cabela's capture of the purported data was not secretive, Plaintiff's claim under the Wiretap Statute should be dismissed.

### B. Plaintiff Does Not Allege Cabela's Intercepted Communication "Contents" Under Massachusetts Law.

In his Opposition, Plaintiff compares and contrasts the wording between the Massachusetts, federal, and Florida wiretapping statutes. While he expends a great deal of text emphasizing some differences in the respective statutes' language, those differences are ultimately immaterial to Cabela's arguments. For example, Plaintiff focuses on how the Massachusetts Wiretap Statute includes "the identity of the parties to such communication" within its definition of "contents." Mass. Gen. Laws ch. 272 § 99(B)(5). However, as explained *infra*, Cabela's is a first party to any communications Plaintiff makes with cabelas.com. Accordingly, session replay does not provide any insight on the "parties to such communication" on its website (Plaintiff and Cabela's).

As discussed in Cabela's Motion, mouse movements, mouse clicks, keystrokes, and URLs recorded by session replay technology are not identifying information of Plaintiff or the substance

3

of communications. Rather, the "mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021). *See also Graham v. Noom, Inc.*, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021); *Jacome v. Spirit Airlines*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021). Plaintiff takes issue with this analogy in his Opposition, claiming that "[c]ourts have rejected this exact analogy as flawed" citing *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).

Contrary to Plaintiff's implication, the *Revitch* decision does not "reject" the logic of the *Goldstein* opinion (and it could not, as *Goldstein* came two years later). The *Revtich* court equated online browsing to a customer making a telephone call to the store, rather than a customer browsing physical aisles. This court need not determine which analogy is more apt because Plaintiff has failed to plead sufficient facts to support that it communicated with Cabela's by browsing its website.

**Mouse clicks and movements.** Plaintiff claims, in conclusory fashion, that "[e]ven if Plaintiff's search was conducted entirely by clicks and mouse movements," those mouse clicks and movements constitute communication "contents" under the Wiretap Act " because the purpose of those acts was to 'search for hunting and fishing gear[.]'" Opp., p. 9. This argument is unavailing. Cabela's is a nationwide retailer of outdoor goods including a wide selection of hunting and fishing equipment. It is not a general store. Any visitor to cabelas.com is presumably searching for outdoor goods – that is not some sort of revelation captured by the use of session replay.

**Keystrokes and "searches."** Plaintiff's Complaint alleges that "[w]hile in Massachusetts, Plaintiff visited www.cabelas.com on his computer, smartphone, and iPad to search for hunting and fishing gear." Complaint, ¶43. As noted in Cabela's Motion, Plaintiff failed to allege that he

4

entered any keystrokes or that Cabela's collected those keystrokes. Recognizing this fatal flaw to their claim, Plaintiff now avers in his Opposition that "common sense confirms that Plaintiff's 'search' included entering keystrokes into Cabela's website." Opp., p. 8. Of course, this is not the standard of review under Rule 12, and the appeal to "common sense" does not change the fact that Plaintiff failed to plead that he entered keystrokes on Cabela's website. Moreover, as the cases cited throughout Cabela's Motion make clear, even if Plaintiff did enter keystrokes, keystrokes are not, by default, contents of communications.

**URLs.** Plaintiff cites to a handful of cases for the proposition that "URLs may constitute 'contents,' even under Federal law." Opp., p. 9. Lost in his analysis of that case law, however, is the key defining feature of those cases: they involve *third-party* tracking or surveillance. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 140 (3d Cir. 2015) ("In the portion of the complaint devoted to the plaintiffs' Wiretap Act claim, the complaint states that '**the [d]efendants' third-party web tracking** permitted them to record information that [c]lass [m]embers exchanged with first-party websites ... which [the d]efendants intercepted while not a party to those communications (**hence third-party tracking**)[.]'"); *United States v. Forrester*, 512 F.3d 500, 504 (9th Cir. 2008) (Defendant "challenges the validity of computer surveillance that enabled **the government** to learn the to/from addresses of his e mail messages, the Internet protocol ('IP') addresses of the websites that he visited and the total volume of information transmitted to or from his account."); *In re Pharmatrak, Inc.*, 329 F.3d 9, 21 (1st Cir. 2003) ("The pharmaceutical companies' websites gave no indication that use meant consent to **collection of personal information by a third party**."); *Undated Opinion of the Foreign Intelligence Surveillance Court*, No. A213-228 (FISA Ct.) (all FISA Court opinions address requests by the U.S. government to conduct wiretapping and other surveillance of foreign spies); *In re Application*

*of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap*, 396 F. Supp. 2d 45 (D. Mass. 2005) (Department of Justice sought order granting use of pen registers and trap and trace devices on four internet service accounts).

The debated classification of URLs as "contents" when intercepted by a third-party is of no moment here. As the owner and operator of cabelas.com, Cabela's is a first-party to the communications that comprise Plaintiff's visits to its website. Thus, while Plaintiff cites to *Forrester* (in *dicta*) that "[a] URL, unlike an IP address, identifies the particular document within a website that a person views," that information is already known to Cabela's, for Plaintiff and all of its website visitors. *Forrester*, 512 F.3d 510 n. 6. Thus, Plaintiff's claim under the Wiretap Statute fails to allege communication "contents" were captured, and his claim should be dismissed.

C. **Plaintiff Does Not Allege the Software Cabela's Uses Is An "Intercepting Device" Under Massachusetts Law.**

As set forth in Cabela's Motion, session replay software is not an "intercepting device" under the Wiretap Act. Plaintiff's Opposition argues to the contrary but does not address the lack of ultimate facts pled in Plaintiff's Complaint, nor the case law cited in Cabela's Motion. Instead, Plaintiff cites differing case law to suggest to this Court that *some* software *can be* a device. For example, Plaintiff cites *Rich v. Rich*, 2011 WL 3672059 (Mass. Super. July 8, 2011), an unpublished Massachusetts state court opinion, for the proposition that key logger software (which Plaintiff claims, without any factual support, is even more elementary than session replay software) is an intercepting device. Critical to the *Rich* holding, the court there found the key logger was an intercepting device <u>because it is capable of recording a wire communication</u>. *Id.* at *6. Indeed, the key logger software in *Rich* was employed by a husband to monitor the contents of messages sent by his wife, which led to his discovery of an affair. *Id.* at *1.

Similarly, Plaintiff cites the Middle District of Florida's decision in *Makkinje v. Extra*

*Space Storage, Inc.*, 2022 WL 80437 (M.D. Fla. Jan. 7, 2022). The district court in *Makkinje* found that a session replay case survived a motion to dismiss where it alleged that the plaintiff's live chats on the website were recorded. In this context, the district court found it possible that session replay software could constitute an intercepting device, though the court stopped short of determining whether it was. However, the present case does not contain any allegations (much less any supported by ultimate facts) that Plaintiff here engaged with a live chat feature while browsing cabelas.com. Thus, this case, with its allegations of mouse clicks, mouse movement, keystrokes, and URLs which do not constitute communications, is factually analogous to those cited in Cabela's Motion.[2] *See supra*, § I-B. Finally, while Plaintiff cites *U.S. v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) for the proposition that "the majority of courts to consider this issue have entertained the notion that software may be considered a device for the purposes of the Wiretap Act" that decision pre-dates the session replay cases cited by Cabela's in its Motion.

## II.     Plaintiff's Invasion of Privacy Claim Fails.

Plaintiff argues that "the reasonableness of Cabela's alleged intrusion of Plaintiff's privacy is a fact question that cannot be decided on a motion to dismiss." Opp., p. 13. This is a convenient argument for Plaintiff (particularly where he also argues the very facts that he claims are premature) but is tantamount to a claim that this Court can never evaluate a motion to dismiss an invasion of privacy claim. That is of course untrue. *See e.g. Branyan v. Sw. Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (granting motion to dismiss plaintiff's Massachusetts state statutory invasion of privacy claim).

Plaintiff also argues that he sufficiently pleaded an invasion of privacy claim because

---

[2] Plaintiff cites the district court decision in *Popa* as supportive of its argument; however, the *Popa* district court did not decide one way or the other whether session replay is a device, but allowed for discovery on the issue. Moreover, *Popa* is in conflict with the decisions cited by Cabela's, which did decide the issue.

"Cabela's tracking included Plaintiff's and the Class members' **personal thoughts, ideas, and communications**, which may have included sensitive data, while on www.cabelas.com, which are intensely personal." Opp., p. 15 (emphasis added). However, Plaintiff cites only to the *McLaughlin* case in his Opposition for this proposition. He did not – and **cannot** – cite to his Complaint because Plaintiff did not actually plead that allegation. Moreover, such a comparison is misplaced here. *McLaughlin* involved the actions of police in reviewing private files and emails on a personal computer. *McLaughlin v. Meehan*, 2018 WL 1041371 (Mass. Super. Ct. Jan. 19, 2018) ("A person's private computer files, including his email accounts, contain a person's thoughts, ideas and communications. They are intensely personal, and functionally no different from a person's physical solitude or seclusion.") Here, Cabela's did not gain access to Plaintiff's computer or the contents thereof. The only information that Cabela's obtained was Plaintiff's movements about its own public website, an extension of Cabela's itself. And to the extent any communications were captured, there were communications with Cabela's.

Finally, Plaintiff cites to *Wolfson v. Lewis*, 924 F. Supp. 1413 (E.D. Pa. 1996) for the proposition that "one of the most significant intrusions on plaintiffs' privacy was defendants' interception in a private home[.]" Opp., pp. 15-16. However, the *Wolfson* case is both easily distinguishable and irrelevant to the instant case. The *Wolfson* matter involved journalists who "engaged in a course of conduct apparently designed to **hound, harass, intimidate and frighten**" their investigation subjects. *Id.* at 1432 (emphases added). The *Wolfson* court allowed plaintiffs' invasion of privacy claims in that case largely because it found that the defendant journalists had engaged in a "pattern of conduct involving **physical** and sensory invasions into [the plaintiffs'] privacy. *Id.* (emphasis added). Here, there is no allegation (nor can there be) that Cabela's intended to hound, harass, intimidate, or frighten Plaintiff, nor are there any allegations of physical

8

invasions of his privacy.

Additionally, the referenced invasion of the *Wolfson* plaintiffs' "private home" is not analogous to the use of session replay on cabelas.com. In *Wolfson*, the defendant journalists engaged in egregious conduct, among other things, going *to* the plaintiffs' private home, creating concern about the safety of the plaintiffs' children, aiming a "shotgun microphone" at the home, and persisting in their conduct after being asked to stop. *Id.* at 1424. Conversely, Plaintiff here visited Cabela's public website, which Plaintiff voluntarily chose to visit. Moreover, Plaintiff did not even do so from his private home – Plaintiff is a resident of Connecticut yet alleges he visited the cabelas.com website while in Massachusetts – i.e., not from his private home at all. Compl. ¶ 5. Accordingly, Plaintiff's reliance on the *Wolfson* case is not only misplaced, but also completely irrelevant here. Plaintiff's invasion of privacy claim should be dismissed for failure to plead a cognizable claim. *See Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 122 (W.D. Pa. 2019) (dismissing invasion of privacy claim as "[t]he act of collecting [plaintiff]'s keystrokes, mouse clicks, and PII is simply not the type of highly offensive act to which liability can attach.").

### III.  Plaintiff's Own Case Law States That He Lacks Standing To Seek An Injunction.

Finally, Cabela's moved to dismiss Plaintiff's claim for injunctive relief for lack of standing. Plaintiff's Opposition relies solely on *Derby v. Jos. A Bank Clothiers, Inc.*, 2014 WL 7361023 (D. Mass. Dec. 23, 2014) to support his standing. There, the plaintiff sued a clothing retailer for requiring the collection of personally identifiable information in connection with credit card transactions, then saving the information in a database. The defendant then allegedly used that information to send unwanted marketing materials to the plaintiff, who sought an injunction and statutory damages. The *Derby* court identified two potential forms of future injury: (1) <u>further</u> collection of the plaintiff's personally identifiable information in connection with credit card

transactions; and (2) injuries relating to the defendant's <u>prior</u> collection of his information.

The *Derby* court held that the plaintiff was not at risk of future injury as to the first category because he could avoid shopping at the defendant's stores or avoid using a credit card for future purchases. *Id.* at \*8 ("Defendant is correct that plaintiff does not appear to be at risk of suffering a future injury by a future collection of plaintiff's personal identification information[.]"). The *Derby* plaintiff, like Plaintiff here, therefore lacked standing in that regard. The *Derby* court, however, held that the plaintiff could suffer a future injury caused by the defendant's <u>ongoing conduct</u> relating to its <u>prior</u> collection of his information.

In his Opposition, Plaintiff attempts to save his lack of standing by arguing that this case fits into this second prong of the *Derby* holding. However, this argument is unavailing, as Plaintiff's Complaint is not about the improper use of information that was previously collected.[3] Indeed, there are no facts alleged to substantiate a claim by Plaintiff that his information is still maintained and used by Cabela's, nor are there any facts alleged regarding Cabela's use of any information collected through session replay. *Cf. Derby* 2014 WL 7361023 at \*5. Thus, the risk of future use of previously collected information here is insufficient to confer standing on Plaintiff to pursue an injunction to prevent the "wiretapping" by Cabela's that is the heart of Plaintiff's Complaint.

## **CONCLUSION**

For the reasons stated above, and in its Memorandum in Support of its Motion to Dismiss, Plaintiff's Complaint should be dismissed in its entirety.

---

[3] Rather, Plaintiff's Complaint seeks an injunction "enjoining Defendant from continuing the unlawful practices described herein", i.e., the "secret" recording of website activity. *See* Compl. ¶ 42; *see also* Compl. ¶¶ 81, 95 ("Cabela's conduct is ongoing, and it continues to unlawfully intercept the communications of Plaintiff and Class members any time they visit Defendant's website with Session Replay Code enabled without their consent. Plaintiff and Class members are entitled to declaratory and injunctive relief to prevent future interceptions of their communications.").

Dated: February 20, 2023                Respectfully submitted,

By: __/s/ Alan Y. Wong_____
    Alan Y. Wong (BBO# 687618)
    awong@shb.com
    Emyr T. Remy (BBO# 704156)
    remy@shb.com
    SHOOK, HARDY & BACON L.L.P.
    One Federal St., Ste. 2540
    Boston, MA 02110
    Tel: (617) 531-1411 | Fax: (617) 531-1602

    Alfred J. Saikali (*pro hac vice* forthcoming)
    asaikali@shb.com
    Jennifer A. McLoone (*pro hac vice* forthcoming)
    jmcloone@shb.com
    SHOOK, HARDY & BACON L.L.P.
    201 South Biscayne Blvd., Suite 3200
    Miami, Florida 33131
    Tel: (305) 358-5171 | Fax: (305) 358-7470

    ***Attorneys for Defendant Cabela's LLC***

**CERTIFICATE OF SERVICE**

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on February 20, 2023:

    Joseph P. Guglielmo
    Carey Alexander
    Ethan S. Binder
    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
    The Helmsley Building
    230 Park Avenue, 17th Fl.
    New York, NY 10169
    Tel.: (212) 223-6444
    jguglielmo@scott-scott.com
    calexander@scott-scott.com
    ebinder@scott-scott.com

    Brian C. Gudmundson
    Michael J. Laird
    Rachel K. Tack
    **ZIMMERMAN REED LLP**
    1100 IDS Center
    80 South 8th Street
    Minneapolis, MN 55402
    Tel.: (612) 341-0400
    Brian.gudmundson@zimmreed.com
    Michael.laird@zimmreed.com
    Rachel.tack@zimmreed.com

    *Attorneys for Plaintiff*

By:   */s/ Alan Y. Wong*
      Alan Y. Wong
      *Attorney for Defendant Cabela's LLC*